**LAW OFFICES OF MATTHEW L. LEVINE, PLLC**
565 FIFTH AVENUE, 7TH FLOOR
NEW YORK, NEW YORK 10017
(212) 880-9517 (office)
(888) 239-0120 (fax)
*info@matthewlevinelaw.com*
*www.matthewlevinelaw.com*

**By ECF, E-mail (ForrestNYSDChambers@nysd.uscourts.gov) and Regular Mail**

January 13, 2016

The Honorable Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street, Room 1950
New York, NY 10007

    Re:    <u>SEC v. Michael J. Xirinachs, 09-CV-7594 (KBF)</u>

Dear Judge Forrest:

    I represent Defendant Michael J. Xirinachs in the above-captioned action. Pursuant to the Court's Orders of December 11, 2015 and January 12, 2016, this letter responds with the rationale as to why Mr. Xirinachs' believes the proposed language set forth in our letter of January 11, 2016 [Doc. No. 212] should be included.

    <u>Huntington Real Property</u>: Mr. Xirinachs understanding of the settlement of the hearing is set forth in the transcript of the October 2, 2015 hearing (excerpt attached as <u>Ex. A</u>). There, SEC counsel stated, "With respect to the sale of the property, the lien priority is whatever the liens are is what is going to be paid. We're not going to pay items that don't have liens on the property. First in time, first in right." (Tr. at 19.)

    Counsel for Mr. Xirinachs subsequently sought clarification (Tr. at 20-21):

    MR. LEVINE: With respect to Mr. Roessner's description of what I understand him saying, just so we're completely clear here. We don't want any ambiguity. When the liquidating agent sells the Baycrest property, the Huntington property, whatever existing priorities are in place now, they will have to be paid. They will be paid. And once those are -- the existing priorities, whatever is there. Whatever is left, they get.

    THE COURT: I would assume you can't do any more than that. Is that right, Mr. Roessner?

MR. ROESSNER: Yes, your Honor. I envision this would be like a DoJ foreclosure. When the receiver is done, they'll make a report we'll submit to the Court about the distribution schedule and probably request a final order of payout, is the way I envision that would work.

Accordingly, the language we proposed in our January 11 letter reflects this understanding, that the SEC agrees to ensure payment of liens that have priority over the SEC's judgment. The proposed language thus defines "bona fide lien" to mean "any judgment or lien recorded against Xirinachs and/or the Property prior to the time of the recording of the judgment against Xirinachs by the SEC." Given that Mr. Xirinachs' 100 percent personal interest in the LLC that fully owns the Huntington property is being used to satisfy the SEC's judgment, this proposed language is appropriate.

<u>Xirinachs' Personal Property</u>: With respect to the SEC's additional assertion regarding Mr. Xirinachs' personal property located at the 30 Baycrest Drive property, although this subject matter does not appear to be encompassed by the Court's Orders at issue, or the Liquidating Agent's proposed Order, I am nonetheless informed that Mr. Xirinachs is not selling such property.

\* \* \* \*

We thank the Court for its courtesy and consideration.

Respectfully submitted,

*[signature]*

Matthew L. Levine

Cc (by ECF & e-mail):
    Michael Roessner, Esq.
    Leslie S. Barr, Esq.

# EXHIBIT A

```
    FA23SECH                                                           1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   SECURITIES AND EXCHANGE
    COMMISSION,
4
                Plaintiff,
5
            v.                              09 CV 7594 (KBF)
6
    DOYLE SCOTT ELLIOTT, et al.,
7
                Defendants.
8
    ------------------------------x
9                                           New York, N.Y.
                                            October 2, 2015
10                                          1:00 p.m.

11  Before:

12                    HON. KATHERINE B. FORREST,

13                                          District Judge

14                          APPEARANCES

15  UNITED STATES SECURITIES AND EXCHANGE COMMISSION
    BY:  MICHAEL J. ROESSNER
16       MARSHA MASSEY

17  MATTHEW L. LEVINE
         Attorney for Defendant Michael J. Xirinachs
18

19

20

21

22

23

24

25
```

```
                                                                   19
     FA23SECH

 1   future, you're able to settle the future and/or reach some
 2   other accommodation so we don't have to be back here again.
 3             MR. ROESSNER:  That's correct, your Honor.  With
 4   respect to the sale of the property, the lien priority is
 5   whatever the liens are is what is going to be paid.  The
 6   mortgage will be paid first.  First in time, first in right.
 7   We're not going to pay items that don't have liens on the
 8   property.  There is a mortgage on the property.  If there is
 9   real estate taxes and the cost of sale, that will come out
10   first.  Then the Commission's judgment will be paid.  The
11   document that was submitted the other day by the defendant
12   indicated that personal liabilities not on the property would
13   also be satisfied.  That's not the case.
14             Did I make that clear?
15             THE COURT:  I understand.  Mr. Levine, do you need any
16   additional clarification on that?
17             MR. LEVINE:  No, we're fine on that, your Honor.
18             THE COURT:  Terrific.  I believe there was a lien by
19   the prior attorney that was indicated, Ira Sorkin.  That was
20   indicated as 290,000, I'm going from memory here, on the
21   Baycrest house.
22             MR. ROESSNER:  My understanding is -- I'm sorry, your
23   Honor.
24             THE COURT:  That was on one of the documents.  If
25   that's the case, that's fine.
```

```
                                                              20
     FA23SECH
```

1            MR. ROESSNER:  If there is a lien on the property from
2    Mr. Sorkin, that would be paid first on time, first in right.
3    That's on the 266 property.
4            THE COURT:  I don't really care.  I'm trying to
5    surface whatever there is.  I have no dog in this fight.
6            MR. LEVINE:  Yes, I believe your Honor is recalling
7    there was a debt listed on Mr. Xirinachs' schedule of debts
8    that we submitted with his declaration.  I don't believe there
9    is a lien on either of these properties related to that.
10           THE COURT:  All right.  Terrific.
11           MR. LEVINE:  With respect to Mr. Roessner's
12   description of what I understand him saying, just so we're
13   completely clear here.  We don't want any ambiguity.  When the
14   liquidating agent sells the Baycrest property, the Huntington
15   property, whatever existing priorities are in place now, they
16   will have to be paid.  They will be paid.  And once those
17   are -- the existing priorities, whatever is there.  Whatever is
18   left, they get.
19           THE COURT:  I would assume you can't do any more than
20   that.  Is that right, Mr. Roessner?
21           MR. ROESSNER:  Yes, your Honor.  I envision this would
22   be like a DoJ foreclosure.  When the receiver is done, they'll
23   make a report we'll submit to the Court about the distribution
24   schedule and probably request a final order of payout, is the
25   way I envision that would work.

                    SOUTHERN DISTRICT REPORTERS, P.C.

```
                                                             21
     FA23SECH


1            THE COURT:  We would make sure the defendant has an

2    opportunity to respond in case there are any issues that we are

3    unaware of.

4            MR. ROESSNER:  Yes, your Honor.  I would do it by

5    motion, yes.

6            THE COURT:  All right.

7            MR. LEVINE:  And yes, and Ms. Massey has indicated,

8    that they will consider the existing offer in the same equal

9    fashion as all other offers.  And with that condition, I think

10   we are in agreement.

11           THE COURT:  All right. And that's acceptable to the

12   government?

13           MR. ROESSNER:  Yes, your Honor.

14           THE COURT:  All right.

15           MR. LEVINE:  And there is one more thing.  I'm sorry,

16   your Honor.  Mr. Xirinachs -- and they are aware of this --

17   Mr. Xirinachs' interest in the 263-265 property, we don't know

18   the value of it.  Initially it was a $200,000 investment.  It

19   may be worth less or very little.  He is going to take whatever

20   reasonable necessary actions he can to transfer that interest

21   and liquidate it for the Commission.  The Commission is aware

22   that he does not have the discretion to do that.  There has to

23   be approval by the LLC manager.  So they are aware of that, I

24   informed them of that, and they indicated to me they were going

25   to take whatever actions they need to ensure that that process
```