USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 15, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
:
SECURITIES AND EXCHANGE COMMISSION, :
:
Plaintiff, :
:
-v- : 09-cv-7594 (KBF)
:
DOYLE SCOTT ELLIOTT et al., : OPINION & ORDER
:
Defendants. :
:
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

Pending before the Court is a dispute between the Securities and Exchange Commission (the "SEC") and Patricia Jackson, the ex-wife of Michael J. Xirinachs, regarding the priority of their respective liens against the proceeds of the sales of two parcels of real property that Xirinachs agreed to turn over to the SEC in partial satisfaction of a judgment entered against him in this Court in the SEC's favor. For the reasons set forth below, the Court concludes that the SEC's liens have priority over Jackson's. The Court therefore grants the SEC's requested relief and directs the Liquidation Agent for the subject properties to distribute the sale proceeds of those properties to the SEC.

I.   BACKGROUND[1]

On July 26, 2012, this Court entered an Amended Judgment (the "Judgment") ordering Michael J. Xirinachs and Emerald Asset Advisors LLC jointly and severally to disgorge $3,052,752 plus $730,621 in prejudgment interest, and

---

[1] The Court here assumes familiarity with the lengthy history of this litigation and recounts only that background that is relevant to resolving the pending dispute between the SEC and Jackson.

pay a civil penalty of $3,835,000, and ordering Xirinachs to disgorge $345,462 plus $82,680.01 in prejudgment interest, and pay a civil penalty of $2,119,000, to the SEC.  (ECF No. 159.)

On May 4, 2015, the SEC moved for an order to show cause why Xirinachs should not be held in contempt for failing to comply with the Judgment based on, inter alia, his "extravagant" personal expenses, his interest in 30 Baycrest Holdings LLC, which owned the property located at 30 Baycrest Avenue, Huntington Bay, Suffolk County, New York 11743 (the "Baycrest Property"), and his conveyance of the property located at 724 Stonehouse Road, Winhall, Vermont 05340 (the "Vermont Property") to his son, Michael W. Xirinachs.  (See ECF Nos. 163, 164.)  The SEC filed a lien on the Vermont Property with the Winhall County Clerk on June 15, 2015.  (Roessner Decl., Ex. B, ECF No. 221-2.)  At the October 2, 2015 hearing on the SEC's motion, the parties settled the dispute without a contempt finding.  (See ECF Nos. 198, 200, 201.)  Pursuant to that settlement, Xirinachs agreed to effectuate the transfer of full ownership of the Vermont Property from his son to himself, and to permit the proceeds from the sale of the Vermont Property and the Baycrest Property to be turned over to the SEC for application to the Judgment.  (ECF No. 198.)  While Xirinachs thus became the titleholder of the Vermont Property in his own name, the Baycrest Property was—throughout these proceedings—owned by 30 Baycrest Holdings, LLC (the "LLC"), a limited liability company as to which Xirinachs had (during these proceedings) become the sole member.  (See ECF Nos. 201, 211.)

Pursuant to the SEC's and Xirinachs's agreement, the Court appointed a Liquidation Agent to sell the Baycrest Property and the Vermont Property. (ECF Nos. 199, 209.) The Liquidation Agent sold the properties at auction. (See ECF Nos. 211, 217.) In issuing a January 22, 2016 Order confirming the Liquidation Agent's sale of the properties (ECF No. 217), the Court overruled Xirinachs's request to include certain language in the proposed sale confirmation order, stating that pursuant to the parties' October 2, 2015 agreement on the record, the sale proceeds were to be subject only to existing liens attached to the subject properties, and not to Xirinachs's personal liabilities (ECF No. 218).

On January 19, 2016, Patricia Jackson (Xirinachs's ex-wife) filed liens for child and spousal support arrears valued at approximately $114,000 against Xirinachs with the Winhall Town Clerk's Office, clouding title on the Vermont Property. (Roessner Decl. ¶ 7, ECF No. 221.)[2] In response to Jackson's filing of these liens, on February 11, 2016, the SEC moved for an order to show cause directing Jackson to set forth her claims to the proceeds of the sale of the Vermont Property. (ECF No. 220.) The Court issued the requested order that same day, which stated that, in order to effect the closing of the sale of the Vermont Property, the Vermont Property was released from Jackson's liens and instead attached to the proceeds of the sale. (ECF No. 222.) The Court also set a briefing schedule regarding the issue of lien priority.

---

[2] Jackson subsequently obtained two additional judgments for child support and spousal support arrears in the amounts of $114,905.39 and $115,000, respectively. (Poster-Zimmerman Decl. ¶¶ 7-8.)

3

On February 29, 2016, the Court received an <u>ex parte</u> proposed order to show cause from Jackson seeking to restrain the SEC from applying the proceeds of the sale of the Baycrest Property to the Judgment until final disposition of the SEC's application regarding the proceeds of the sale of the Vermont Property. (ECF No. 237-1.) After the Court denied Jackson's request to issue her proposed order and instead set a hearing date (ECF No. 237), the SEC and Jackson informed the Court that they had agreed that a portion of the proceeds of the sale of the Baycrest Property and Vermont Property should be held in escrow pending a final determination by the Court of the relative priorities of the SEC's and Jackson's claims. (ECF No. 239.) The parties agreed that their applications regarding both subject properties should be considered together by the Court. (ECF No. 239.)

The Court subsequently endorsed a proposed briefing schedule on March 2, 2016 (ECF No. 242), and then endorsed a revised briefing schedule on March 18, 2016 (ECF No. 244); the latter schedule called for Jackson to file a responsive brief on March 25, 2016, and the SEC to file a reply brief on April 8, 2016.[3] In accordance with the Court's March 18, 2016 Order, Jackson filed her opposition brief on March 25, 2016 (ECF No. 251); the SEC filed its reply brief on April 8, 2016 (ECF No. 259), and the matter became fully briefed on that date.[4]

---

[3] In the meantime, on March 16, 2016, Jackson sought Writs of Execution directed to the Liquidation Agent and his counsel. (Poster-Zimmerman Decl., Ex. 8, ECF No. 250-2.)

[4] On April 1, 2016, Jackson sought leave to file an additional brief after the SEC's anticipated filing of its reply brief. (ECF No. 255.) The Court denied that request. (ECF No. 256.)

4

II.    LEGAL STANDARDS

    A.    <u>Enforcement of a Money Judgment</u>

Pursuant to Federal Rule of Civil Procedure 69(a), the procedure for enforcement of a money judgment must accord with the procedure of the state where the court is located (in this case, New York), except that a federal statute governs to the extent that it applies.  Fed. R. Civ. P. 69(a)(1).  Because the SEC, an agency of the United States, is the recipient of the judgment against Xirinachs, federal law provides that a writ of execution to enforce the judgment may be executed nationwide.  28 U.S.C. § 2413.

The enforcement of money judgments in New York is governed by Article 52 of the New York Civil Practice Law and Rules ("CPLR").  The CPLR provides that a "money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment."  N.Y CPLR § 5201(b).  Pursuant to CPLR §§ 5239 and 5240, the Court has the power to adjudicate questions of any interest that either the SEC or Jackson has in the subject properties underlying the instant dispute.  N.Y. CPLR §§ 5239, 5240.

    B.    <u>Lien Priority</u>

        1.    <u>New York law</u>

Generally, under New York law, executions or orders of attachment on personal property are delivered to the Sheriff and are given priority in the order in which they are delivered to the enforcement officer, except that executions for child

5

support have priority over any other assignment, levy or process.  N.Y. CPLR § 5234(b).  This rule has exceptions.  For instance, a judgment creditor may obtain a lien on personal property of the judgment debtor through an order appointing a receiver over the property.  N.Y. CPLR § 5228.5.[5]  Where a receiver of personal property has been appointed by order, and the order is filed before the property is levied upon, the rights of the judgment creditor who secured the order are superior to those of the judgment creditor entitled to the proceeds of the levy.  N.Y. CPLR § 5234(c).  New York law further provides that where a judgment creditor has secured an order for appointment of a receiver of an interest of the judgment debtor in personal property, the judgment creditor's rights in the property are superior to the rights of any transferee of the property.  N.Y. CPLR § 5202(b).

As to real property, New York law provides that a judgment creditor secures a lien against the real property of a judgment debtor by causing the judgment to be docketed in the county where the real property is located.  N.Y. CPLR § 5203(a); In re Scarpino, 113 F.3d 338, 341 (2d Cir. 1997).  The priorities among competing judgment creditors are determined on the basis that the first to docket a judgment in the county where the realty is located has full rights in the property, unless there is a surplus.  Musso v. Ostashko, 468 F.3d 99, 106 (2d Cir. 2006); see N.Y. CPLR § 5203(a).  This bright line rule "serves not only to notify potential creditors and other interested parties of the existing lien, but also to permit the lienholder to rely on its

---

[5] A liquidation agent is functionally equivalent to a receiver.  Cf. Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat. Ass'n, No. 14-cv-9928 (KBF), 2015 WL 2359295, at *4 (S.D.N.Y. May 18, 2015); In re Libor-Based Fin. Instruments Antitrust Litig., No. 11 MDL 2262 NRB, 2015 WL 4634541, at *110 (S.D.N.Y. Aug. 4, 2015).

interest in the property." Musso, 468 F.3d at 106.  As to the priority of liens against real property, New York law does not confer any higher priority with respect to executions for child support.

        2.     Vermont law

Under Vermont law, a final judgment issued in a civil action constitutes a lien on any real property of a judgment debtor if properly recorded.  12 V.S.A. § 2901.  A judgment creditor may record a judgment lien in the town clerk's office of the town where real property of the debtor is located.  12 V.S.A. § 2904.  Vermont follows the common law "first in time, first in right" rule for priority of liens, and priority is based on the time a lien attaches and becomes perfected.  Colson v. Town of Randolph, 35 A.3d 1065, 1070 (Vt. 2011).  Vermont law does not contain any provision conferring higher priority for judgment liens against real property arising from a claim for child support.

III.    DISCUSSION

    A.    Baycrest Property

On March 16, 2016, Jackson sought Writs of Execution, arising from her judgments for child and spousal support arrears, directed to the Liquidation Agent and his counsel with the Suffolk County Sheriff in regards to Xirinachs's property.  (Poster-Zimmerman Decl., Ex. 8.)  As applied to the Baycrest Property, Jackson's Writs of Execution suffer from (at least) one fatal defect.  The Baycrest Property was not owned by Xirinachs, but rather was owned by the LLC, and Jackson has never obtained a judgment against that entity.  Because Jackson has no claims

against the LLC, she has no interest in the proceeds of the sale of the Baycrest Property.

Seeking to avoid an adverse ruling on the basis that she does not in fact have any legal claim against the titleholder to the Baycrest Property, Jackson argues that, based on the SEC's acceptance of the Baycrest Property in partial satisfaction of the Judgment against Xirinachs, the SEC should be collaterally estopped from arguing that Jackson's liens attached only to Xirinachs in his personal capacity, and not also to property owned by the LLC. This argument fails because Jackson misconstrues the events giving rise to the SEC's entitlement to the sale proceeds of the Baycrest Property.

In support of its May 4, 2015 motion for an order to show cause why Xirinachs should not be held in contempt, the SEC did seek to demonstrate that the Baycrest Property was an asset that Xirinachs should have liquidated to partially satisfy the Judgment against him. As a result of the SEC's and Xirinachs's settlement of the contempt proceeding, however, there has been no finding in this action that Xirinachs's personal liabilities attached to the proceeds of the Baycrest Property, or that the LLC's assets may be reached by Xirinachs's creditors. Rather, the posture of the settlement was that the LLC itself agreed to turn over the Baycrest Property with the proceeds to go to the SEC, and the SEC agreed to accept those proceeds in partial satisfaction of the Judgment against Xirinachs.[6] Jackson was not a party to that agreement. She additionally fails to cite any authority that

---

[6] To the extent that any party has any standing to challenge the order to turn over the Baycrest Property in partial satisfaction of the Judgment, it is either Xirinachs or the LLC itself. In any case, Jackson is not the proper party to bring such a challenge.

8

a judgment lien against an individual is effective against a limited liability company owned by that individual. Such a view contradicts the well-established principle that a limited liability company and its members are not generally liable for each other's debts. Angelino v. Francis J. Angelino, D.D.S., P.C., 83 A.D.3d 1186, 1188 (3d Dep't 2011) (citing Matter of Morris v. New York State Dep't of Taxation & Finance, 82 N.Y.2d 135, 140 (1993)). As a result of this determination, the Court need not and does not reach the parties' remaining arguments regarding priority as to the Baycrest Property.

    B.    Vermont Property

In contrast to the Baycrest Property, Xirinachs held title to the Vermont Property in his own name. On June 15, 2015, the SEC filed a judgment lien against Xirinachs with the Winhall Town Clerk's Office. (Roessner Decl., Ex. B.) On January 19, 2016 and March 15, 2016, Jackson filed judgment liens for unpaid child and spousal support with the Winhall Town Clerk's Office. (Roessner Decl. ¶ 7; Barr Decl. ¶ 7, ECF No. 247.) As explained above, New York and Vermont both apply—with respect to liens against real property—the principle that the first creditor to record a judgment lien where the realty is located has full rights in the property. Whether this dispute is governed by New York or Vermont law, it seems clear that the SEC's June 2015 lien against the Vermont Property takes priority over Jackson's subsequently filed liens.

Jackson argues that, notwithstanding the above, her liens take priority over the SEC's based on the priority given to executions for child support under CPLR § 5234(b). Although recognizing that the Vermont Property is real property, Jackson

9

argues that § 5234—which applies only to personal property—governs this issue because she seeks to execute against the <u>cash proceeds</u> from the sale of the Vermont Property, which are being held in escrow by the Liquidation Agent, rather than against the Vermont Property itself.  The Court is unpersuaded.  The Vermont Property was real property that the Liquidation Agent was authorized to arrange the sale of for the purpose of turning over the sale proceeds to the SEC to partially satisfy the Judgment.  At the time that the Vermont Property was converted into cash proceeds by the Liquidation Agent's sale, the Vermont Property was already being held by the Liquidation Agent for the benefit of the SEC.  The cash proceeds of the sale were never possessed by or belonged to Xirinachs.  The rules governing liens against personal property therefore do not apply.  Jackson fails to provide any support for her position that CPLR 5234(b) applies to proceeds from the sale of real property, or explain why her proposed approach would not disrupt the distinction that the legislature has drawn between the priority of liens against real property versus personal property.[7]

Jackson also argues—without citation to any authority—that her liens are entitled to priority because public policy dictates that child support arrears reduced to a money judgment should be satisfied from a judgment debtor's funds before a governmental agency's lien is satisfied, and that the Court should invoke its equitable powers to re-order the lien priorities with respect to the Vermont Property (and the Baycrest Property).  (Jackson's Opp. Mem. of Law at 9, ECF No. 251.)

---

[7] Jackson's proposed rule would effectively alter which rules govern lien priority at the instant that real property is sold for cash.  Such an approach produces potentially odd results and would undermine the certainty provided by the first in time first in right rule.

While there are certain contexts in which a court may invoke equitable powers to adjust rights and priorities between creditors, see, e.g., Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 24 (2000) ("Bankruptcy courts do indeed have some equitable powers to adjust rights between creditors. . . .  That is, within the limits of the Code, courts may reorder distributions from the bankruptcy estate, in whole or in part, for the sake of treating legitimate claimants to the estate equitably" (citation omitted)); Wagner v. Maenza, 223 A.D.2d 640, 641 (2d Dep't 1996) ("The doctrine of equitable subrogation applies where the funds of a mortgagee are used to satisfy the lien of an existing, known incumbrance when, unbeknown to the mortgagee, another lien on the property exists which is senior to his but junior to the one satisfied with his funds." (quotation marks omitted)), Jackson has not identified any instance—nor has the Court found any—in which a court subordinated a governmental agency's claim in the sort of circumstances present here.  Jackson does not assert that the SEC has committed any malfeasance or other inequitable conduct or that there are any particular facts or unusual circumstances in this case that allow the Court to subordinate the SEC's earlier filed lien to her liens.  While this Court acknowledges the public policy of protecting minors caught in the midst of divorces which have a negative financial impact, here the Court finds there is no adequate basis to hold that the SEC's lien should be subordinated to Jackson's liens in conflict with the general rules applicable under New York and Vermont law.

IV.  CONCLUSION

For the reasons set forth above, the Court concludes that the SEC's lien has priority over Patricia Jackson's liens with respect to the sale proceeds of the

properties located at 30 Baycrest Avenue, Huntington Bay, Suffolk County, New York 11743 and 724 Stonehouse Road, Winhall, Vermont 05340. The Liquidation Agent is hereby directed to distribute the proceeds from these two properties to the SEC in partial satisfaction of the July 26, 2012 Amended Judgment entered against Michael J. Xirinachs. Ms. Jackson is directed to dissolve all restraining notices, writs, or any other state efforts to encumber, garnish, or dissipate the sale proceeds from the Vermont Property or the Baycrest Property.

SO ORDERED.

Dated:   New York, New York
         April 15, 2016

*[signature: K B. Forrest]*

KATHERINE B. FORREST
United States District Judge